IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TITO E. MARRERO,** | ) | CASE NO. 1:22 CV 1085 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| **VETERAN'S ADMINISTRATION, et al.,** | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

*Pro se* Plaintiff Tito E. Marrero filed this civil rights action under 42 U.S.C. §§ 1983, 1985, 1986 and 1988 against the Veteran's Administration ("VA"), VA Home Loans Employee Christopher Robey, VA Home Loans Supervisor Myron Head, Housing and Urban Development ("HUD"), and HUD Cleveland Ohio Director Pamela E. Ashby. Plaintiff contends he purchased a new construction home in Texas and financed it through a VA loan. He contends the home had issues with the plumbing and sewage due to improper construction, rendering it uninhabitable. He asserts that the Defendants did not assist him in obtaining resolution of the issues with the builder, the realtor, or the lender, which he contends is a denial of due process and equal protection. He seeks monetary damages.

## II. BACKGROUND

On March 26, 2020, Plaintiff signed an agreement to purchase a new construction home located at 3831 Opal Avenue, Dallas, Texas for $200,000.00. Plaintiff paid $40,000.00 as a down payment and financed the remainder of the purchase price through a VA loan.[1] As part of the

---

[1] Plaintiff alleges that he purchased a HUD home, but that is not reflected in any of the paperwork Plaintiff signed to purchase this home. The Third Party Financing Addendum did not check the box for FHA insured financing. Instead,

purchase agreement, Plaintiff agreed to accept the property "as is." (ECF No. 1-2, PageID 17). The purchase agreement further defined "as is" to mean: "the present condition of the [p]roperty with any and all defects and without warranty except for the warranties of title and the warranties in this contract." (ECF No. 1-2, PageID 16). The agreement indicates that the "seller makes no other express warranties." (ECF No. 1-2, PageID 17). Nevertheless, despite the agreement to accept the property in its current condition, the Plaintiff was permitted access to the property at reasonable times to have the property inspected by licensed inspectors of his choosing and could thereafter negotiate repairs or treatments based on that inspection. (ECF No. 1-2, PageID 16). The Seller agreed to turn the utilities on and keep them on for the duration of the inspection. *Id*. Plaintiff does not indicate why the home was sold "as is" or whether he purchased a house for which construction had yet to be completed.

The purchase agreement further provided that in order for Plaintiff to obtain VA guaranteed financing, he was required to obtain a written appraisal from the VA showing that the property is not worth less than $200,000.00. On May 14, 2020, Bank of America, the lender providing the funds for the VA guaranteed loan, sent Plaintiff a Lender's Notice of Value, indicating the VA had appraised the home and found its purchase price to be reasonable at $200,000.00. That notice specifically stated:

> The VA appraisal was made to determine the reasonable value of the property for loan purposes. <u>The appraisal must not be considered a building inspection.</u> Neither VA nor the lender can guarantee that the home will be satisfactory to you in all respects or that all equipment will operate properly. A thorough inspection of the property by you or a reputable inspection firm may help minimize any problems that could arise after loan closing. In an existing home, particular attention should be given to plumbing, heating, electrical and roofing components. VA recommends

---

the box for VA guaranteed financing is checked, with the amount to be borrowed and the interest rates filled in only for that section.

> testing for radon, which the government has determined can cause lung cancer.
>
> **REMEMBER: VA GUARANTEES THE LOAN, NOT THE CONDITION OF THE PROPERTY.**

(ECF No. 1-2, PageID 31) (emphasis in original). Plaintiff does not indicate whether he exercised his right to have the property inspected by an independent licensed inspector. He alleges his closing costs included termite and home inspection, but it is not clear whether he is referring to a separate home inspection he obtained or one that was conducted by the VA for the purpose of guaranteeing the loan.

The VA Notice of Value also listed a number of conditions that applied to the property. Among them were the conditions that Plaintiff must obtain: (1) a builder's certification that the new construction met the energy conservation standards of the International Residential Code; (2) an insect inspection report; (3) a soil treatment guarantee; (4) a certificate of occupancy from the local building authority; and (5) a 1-year VA builder's warranty completed on VA Form 26-1959 Warranty of Completion of Construction from the builder. (ECF No. 1-2, PageID 31–32). The Notice indicated that if Plaintiff obtained the VA builder's warranty from the builder, the VA would "provide assistance with construction complaints limited to defects in equipment, material and workmanship reported during the 1-year builder's warranty period." (ECF No. 1-2, PageID 32). Plaintiff does not indicate whether he obtained these necessary items, particularly the VA builder's warranty, for the VA guaranteed loan.

Plaintiff claims, without much explanation, that he was forced to move from the home because improper installation of plumbing and sewer pipes rendered the new home uninhabitable. He indicates he lived in the home by himself for approximately eight months when he began to have problems with the sewage system. He does not elaborate on the nature of the problems. He

3

contacted Liberty Mutual, who may be the company providing his homeowner's insurance policy, as well as City Wide Community Development and its owner Sherman Roberts. He indicates that Liberty Mutual hired independent professionals certified in plumbing and sewage installation who reported that the installation contained several defects and was not in compliance with either Texas or Dallas code. (ECF No. 1-2, PageID 28–29). He made several attempts to resolve the issues with Roberts and City Wide Community Development, but they did not respond to his requests.

Plaintiff brought a lawsuit, through counsel, against City Wide Community Development Corporation in the 101st Judicial District Court in Dallas, Texas on June 28, 2021. Plaintiff's attorney learned that City Wide Community Development had filed a Chapter 7 Bankruptcy on April 30, 2021 and indicated to the state court on March 25, 2022 that the action must be stayed. Although Plaintiff filed several *pro se* motions after the stay was put into place, the Court has not responded, and the case remains inactive on the Texas state court's docket.

Plaintiff has now filed this action. He does not name City Wide Community Development or its owner as Defendants. Instead, he seeks to pursue an action against the VA, several of their employees, HUD and its Director at the branch in Cleveland, Ohio because they have not intervened to help him pursue his claims against City Wide Community Development. Plaintiff contends their lack of response is a violation of due process and equal protection under the United States Constitution. He contends the VA's promise to "provide assistance with construction complaints limited to defects in equipment, material, and workmanship reported during the 1-year builder's warranty period" entitles him to relief. (ECF No. 1-2, PageID 32). He seeks compensatory damages under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

### III. STANDARD OF REVIEW

The Court is required to construe Plaintiff's *pro se* Complaint liberally and to hold Plaintiff's Complaint to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam), district courts are permitted to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed by a non-prisoner if it appears that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple*, 183 F.3d at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)). Dismissal on a *sua sponte* basis is also authorized where the asserted claims lack an arguable basis in law, or if the district court lacks subject matter jurisdiction over the matter. *Id.* at 480; *see also Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).

### IV. DISCUSSION

As an initial matter, although Plaintiff alleges that he purchased a HUD home when he did not meet the income requirements, that is not reflected in any of the paperwork Plaintiff signed to purchase this home. The Third Party Financing Addendum to the Purchase Agreement did not check the box for FHA insured financing. Instead, the box for VA guaranteed financing is checked, with the amount to be borrowed and the interest rates completed only for that section. There is no indication that HUD guaranteed financing was used for this purchase. Moreover, he states he never spoke to or interacted with Cleveland, Ohio HUD Director Pamela Ashby but named her as a Defendant because he did not know anyone else in HUD. Because HUD and Ashby have no apparent connection to this case, the claims against them are dismissed.

Furthermore, the United States, as sovereign, is immune from suit unless it consents to be sued, and the terms of its consent define a court's jurisdiction to entertain the suit. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Sovereign immunity extends to federal officials sued in their official capacity and federal agencies. *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) (affirming dismissal of suit against federal agency because federal sovereign immunity "extends to agencies of the United States" and "[t]he federal question jurisdictional statute is not a general waiver of sovereign immunity"). The Plaintiff bears the burden of identifying a waiver of sovereign immunity in order to proceed with a claim against a federal agency or federal official. *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000).

Plaintiff first attempts to proceed against the United States and its employee under 42 U.S.C. § 1983. This statute is applicable only to state and local government agencies and employees. It does not include claims against the federal government or its officials. Plaintiff does not have a cause of action against these federal government Defendants under § 1983.

The Supreme Court of the United States has implied cause of action against federal government officials for violation of civil rights in only three circumstances: (1) to compensate a person injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures, *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971); (2) in a Fifth Amendment gender-discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) in an Eighth Amendment Cruel and Unusual Punishments Clause case, *Carlson v. Green*, 446 U.S. 14 (1980). The Court has not approved of an implied damages remedy under the Constitution itself in any other context. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1855 (2017). Furthermore, the Court has determined that sovereign immunity bars such an action against the United States, its agencies, and its employees sued in their official capacities. *Correctional Services Corporation v. Malesko*,

534 U.S. 61, 70 (2001). Even in the recognized contexts, the claims can only be brought against officials sued in their individual capacities. Plaintiff's due process and equal protection claims do not fit within the implied causes of action recognized in *Bivens*, *Davis* or *Carlson*. Moreover, the VA and HUD would not be subject to suit in these contexts.

Similarly, the United States has not waived sovereign immunity under 42 U.S.C. § 1985. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) (affirming grant of summary judgment to federal officers on all claims against them in their official capacity, including a claim under § 1985, on sovereign immunity grounds). To the extent Plaintiff seeks relief against the Defendants in their individual capacities, he has not alleged facts to suggest a plausible claim under § 1985. Title 42 U.S.C. § 1985 forbids "two or more persons" from "conspir[ing] ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." The Supreme Court has determined that this section requires "that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971). Plaintiff has very few factual allegations against the individual Defendants. He states that Robey was "very cold-blooded" to him but does not elaborate on this statement. (ECF No. 1, PageID 6). He states Robey and Head did not speak to the realtor or the loan officer to help him obtain relief. These allegations do not suggest the existence of a conspiracy, much less one that was motivated by Plaintiff's race or membership in a protected class.

Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985 yet fail to prevent them. Without a violation of § 1985, there can be no violation of § 1986. Section 1988 allows this Court in its discretion, to award "the prevailing

party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Because Plaintiff is not the prevailing party, § 1988 is not applicable.

## V. CONCLUSION

Accordingly, this action is **DISMISSED**. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

_____
CHARLES E. FLEMING
UNITED STATES DISTRICT JUDGE